Well, welcome to the 4th Circuit sitting in Lexington. I hope it didn't cause you any disruption. We have the first case, South Carolina Department of Education v. Arne Duncan, which is the Department of Education, Federal Department of Education. And Ms. Kelly, when you're ready, we'll hear from you. Good morning. My name is Shelley Kelly and I'm here with Barbara Drayton and Carla Hawkins from the Department of Education. This case before you is about... That's the South Carolina Department, right? That is. Yes, sir. Okay. This case is about the failure of the Secretary of Education to follow his statutory obligations to deal fairly with the state of South Carolina with regard to South Carolina's funding under the Individuals with Disabilities Education Act. The Secretary of Education reduced South Carolina's IDEA funding by $36.2 million without affording South Carolina the right to notice and a hearing with regard to the matter as is required under the IDEA and the General Education Provisions Act. South Carolina is before you today not... Counsel, let's be sure before you get into too much. As I understand it from your reply brief, the only relief that you seek were you to prevail in this case is that you want a hearing. That's correct. We're not looking at the merits? That's correct. Okay. As a matter of fact... You'll have a good fight on the merits. We will. I agree with that. Yes, sir. Okay. That's why we're asking you today to review the decision whether the Secretary should have not reviewed the decision of the waiver. We're asking you to review whether the Secretary erred in his May 22, 2012 decision that South Carolina did not have a right to an administrative hearing before either the Administrative Law Court under GEPA or the hearing officer process under IDEA. We're asking this court to remand the case... Is the GEPA process or the standard different from the IDEA? No, it's not. It's a different hearing process, but it's still the standard review process. Wouldn't we follow the IDEA if it's more particularized and closer to the issues in this case than the GEPA, which is a generalized statute? I think the GEPA is a catch-all for areas that aren't covered by the IDEA. So if there is merits to the argument that the IDEA does not specifically require a hearing in this case... So it's a fallback position for you? It's a fallback to keep a case like this out of the district court, which I do not believe it belongs in district court on an evidentiary-type hearing at this point. And where does the IDEA specifically require a hearing? The hearing is required in two places. Under the Eligibility Determination Section, which is Section 20 U.S.C. 1412 D.2. That section says that the secretary cannot make a final determination that a state is not eligible for a grant until he has given the state reasonable notice and an opportunity for a hearing. Well, we are looking at eligibility... Well, that's one. I'll give you the other as well. It's under the Withholding Section, which is 20 U.S.C. 1416. There's a different approach to get to each section. Under Eligibility, there are 25... Well, counsel, you should, in the course of your discussion, the federal government says we don't even have jurisdiction to hear this appeal. So that's a goal you need to discuss, because if we don't have jurisdiction, then we don't get to anything else. And I think you would not have jurisdiction if we brought the case directly to you as a review of the waiver decision or directly... If we had appealed from the Deputy Secretary Miller's decision directly to this court, I believe that would have been improper. We were going through the hearing process to get to the Secretary of Education, and the Secretary of Education's determination is directly appealable under both the Eligibility Section, the 1412, and under GEPA, if we want to look at that route. So that's... You're correct. We agree that there's not a direct appeal from the first-level decision to deny the waiver. We actually are seeking that appeal, that review through the administrative process so we can build a record and have... If, at the end of that administrative process, the Secretary of Education would review that administrative decision and make a determination whether the hearing officer... But if you're going to do the general administrative process, you'd have to go under the APA. And so it seems to me, in order for you to get the route you took, you have to come under 416. 416, which says if any state is dissatisfied with the Secretary's action with respect to the eligibility of the state, then you can come to us under that section. And I gather that's what you're relying on? That's correct. I do believe... Additional review? Yes. I also believe, though, under the GEPA, there is a direct review of the Secretary's decision to this court as well. So there is an administrative... The administrative court referenced in GEPA is actually the administrative court within the Department of Education. That court's decision is then reviewable by the Secretary of Education, and then from there, the Secretary's decision is directly appealable to this court. Alright. Well, if we're proceeding under the ADEPA, who gives you your hearing? The Secretary would order either a hearing officer or a panel, a hearing panel. That's actually spelled out in regulation. Regulation 34 CFR 600.179 through 184 are those hearing procedures. So you would have... We would have notice that the hearing would take place. We would have an opportunity to present evidence. That's what we don't have here. We did have discussions beforehand with staff at the U.S. Department of Education to establish what the deficit was. We never had an opportunity to really get into the issues to discuss why the state ended up in the place it came, and whether the state was entitled to a waiver under that waiver provision. We had looked at... After the administrative process began, we requested guidance on... We expected a letter, a notice letter. That letter never came, so we requested guidance and was told there was no appeal under the IDEA. That's why the state of South Carolina filed under GEPA in the administrative law court within the U.S. Department of Ed. The U.S. court sent it back to the secretary. Frankly, for months, we didn't hear any word about what they were doing with our case. Again, what we're looking at... I believe I like to go through the eligibility statute to explain the reasons for why we believe that applies here. There has to be some... Under IDEA, and again, we believe under GEPA as well, there has to be some... There is a right to present the case at the administrative level. That was not allowed. Under the eligibility section, the state is eligible for assistance under the IDEA if it meets each of 25 conditions. One of those conditions is the maintenance of effort. We have, as a state, all states have to submit an application to the secretary of education stating whether it meets or doesn't meet these exceptions. Well, the federal government's response, as I understand it, is that there was never an eligibility determination here. So, therefore, the threshold that you have to cross, I would take it both for jurisdiction and for relief, is never met. So, it seems like to me that you have to address that distinction and tell us why they're wrong. Well, I believe they are wrong because they are, in essence, saying we're only eligible for part of our grant. They determined that the Department of Education did not meet the waiver requirements. Had the department met the standard for waiver, then it would have met... Eligibility is item number 18 in the eligibility requirements under the statute. Then it would have met the eligibility requirements, we would have received full funding, and there would be nothing to argue here today. Just because there's a statutory penalty for the eligibility requirements doesn't mean that it's not subject to review. They still made a determination that the state did not meet maintenance of effort and that the state was not eligible for the waiver. So, the determination that you're not eligible in part is sufficient? We believe it is, and we believe it's consistent with this court's decisions in other cases. In the Virginia v. Riley case, we looked at a similar case where Virginia was told that they didn't have a right to appeal because they did not have an approved plan. Here, the State Department of Education has an approved plan, but we're not entitled to a hearing. So, the standards in both cases, it would be almost impossible to ever get to a decision or any kind of administrative review under eligibility. Note that had the U.S. Department of Education not granted any of the waivers, the state of South Carolina could have lost up to $111 million of annual funding. Now, this law, we believe, will be amended. As of yesterday, the U.S. Congress passed a concurrent resolution, and the Counsel for the Secretary will present it to you if you would like a copy, that will end the perpetual penalty. So, at the time this case was heard, the $36 million reduction was a perpetual reduction. Our funds would never be restored. By act of Congress yesterday, and everyone expects this to the President. You wouldn't have to seek the waiver each year? Well, no. Once the waiver is denied, under the law, it's actually currently in effect until the President signs the bill. That funding is forever reduced. So, $36 million in perpetuity, our funds would have been reduced. Just as a hypothetical, had the Secretary not granted any of the waivers, the state could have lost two-thirds of its funding in perpetuity. Now, the state of South Carolina asked our legislative delegation to work on a solution for this, realizing that if we don't have a favorable resolution in this case, we would be forever without the $36 million. So, that law, as I said, we do expect it to go into effect. So, we're not looking at the perpetual. What about the $36 million for whatever year this is? The $36 million was reduced out of the current budget year, so our state received $36 million less than that. Now, the year that you were first penalized, whatever year that was. That's actually this current year. That's this current year? Well, I thought it was 2009-2010. Well, 2009-2010 was the year that it occurred, and that was the same year that our state budget's educational revenue was reduced by $1.2 billion. So, the funding was cut across the board. The impact of the funding ended up with a special ed funding was reduced as a result of those across-the-board cuts, but that occurred in 9-10. However, the Secretary of Education issued the penalty for this current year. He delayed a year, gave us— But that's not before us. What's before us is the 2009-2010 action. Right. Well, actually, what's before you is the decision by the Secretary in May 2012 that says the state does not have a right to a hearing. All right. But the penalty was actually delayed one year, and it was impacted this year. The point I was trying to get at—I didn't understand why you were bringing in the action of Congress now. I wanted to be sure this case is not moved. There's still a year that you're out $30-something million, right? That's correct. Okay. And if there is a remedy for the state, if the decision from this court is rendered prior to the end of the state fiscal year, we will be able to have those funds restored. What's your fiscal year? Our fiscal year is June 30th, and it would impact this year's funding. And the funds that were—our state did use other state funds to make up for the difference. Those funds were taken from other activities in the schools, which we've now moved funds from general education to special ed. How would they be restored if all we're deciding on is whether you're entitled to a hearing or not? You would still have to go through the hearing process to determine if the decision was correct or not to reduce your funding. That's correct. But we would ask that in doing so, if you determine that we were due a hearing, that you would have the U.S. Department of Education restore the funds until such time as the hearing could take place. And those funds are still available in the federal coffers right now. Is that a request for relief in your brief? Yes, it is. It was a preliminary motion? It's also part of the relief request, that you remand and— In order to address that motion, do we have to take a look-see at the merits? I do not believe so, because you can— I mean, automatically, just giving you a hearing, why should we stay the action of the federal secretary, just because we've said procedurally they have to give a hearing? But for the procedural deficiencies on the federal level, they may not have reduced our funds. You mean they're afraid of the hearing? I wonder. I don't know. I thought they had some pretty good points to make. All right. Tell us again why, if we rule to give you a hearing, what's the basis for staying the action of the federal government and giving you your money back? Well, this court in the Virginia v. Riley case did that. They found that because of the violations on the federal level that Virginia was— Well, the only violation we would be finding is that they didn't give you a hearing when you said you wanted a hearing. I don't see how that gets you to a retroactive award of funds. Well, it's not a retroactive— —that was premature, that we should have gotten a hearing, a final decision should have been rendered. That remedy will still be available to them. If we have a hearing in March— Your argument, as I gather, is that if you're right procedurally, they would not have withheld the 36 until the determination was final. That's correct. And so if we extend the process, then you're saying postpone their action on the money until the process is complete. That's correct. And there's no harm to the federal government in doing so. Those funds have not been dispersed yet to other states. Have they been sequestered? Reduced? I believe they're not. You know that famous verb now. I know. That's true. But, I mean, there is a risk on the Department of Education's level. If the case is heard next fall, and the secretary, through the hearing process, could make the same finding, and then we would have the funds reduced next year. I mean, so it's not ending the penalty, it's just maybe giving us a right to defend it and then move on. All right, Ms. Kelly, you have some rebuttal time. We'll hear from Ms. Klein. May it please the court, Alisa Klein for the federal government. Step back a bit since I know there are some technical issues. In terms of the relationship between jurisdiction and the hearing issue, and I'm focusing on the IDEA language, they're coextensive. So, of course, the state's argument is that... Is that a... that requires you to make a small concession, I gather. The language of jurisdiction says that we have jurisdiction with respect to, and the language of the hearing is slightly different. It may be the same thing, but I gather we should treat that the same. In other words, if we find jurisdiction, then... That's how we read it. I recognize the difference, but I think it makes sense to read those as the same point. I'm going to remain focused on the IDEA language because, as we've explained in our briefs, the General Education Provisions Act, that's a tool, an arsenal that the department can use if it chooses, but it was not the basis for the action taken here. And so those provisions really don't have anything to do with the action taken here. So, in order... There are two arguments that the state is making in service of the claim that it should have an ALJ-type hearing, and both of those are based on the language of the IDEA, and I just want to flag, though, that the jurisdiction overlaps for one but not the other. So the argument that this was a denial of eligibility, if they were correct, there would also be jurisdiction. The argument that this reduction was a withholding within the meaning of the IDEA, that's 1416, that's not the type of action that's subject to direct review in this court. So I'm going to... Again, I'll stay focused, as counsel for South Carolina did, on the eligibility argument because in considering whether the court has jurisdiction, the court would also consider whether this is a denial of eligibility. So, and the reason that it's not a denial of eligibility is that if you look at 1412A, a state is eligible for assistance under this subpart, this is Part B of IDEA, for a fiscal year if a state submits a plan that provides the required assurances in those 25 subparagraphs of the Act. And just also to be clear, this language, everything changed in 1997, there was a comprehensive reauthorization, and the statute was reauthorized again in 2004, so the language is quite different from what it was back when this court considered the Virginia litigation. So this is now, it's now a year-to-year basis, every state submits an... Why do you say it's year-to-year? It looks to me, under 1411, that Congress provided for mandatory grants, at least up to 2011, and specified the exact amount and the proportion, and it seems to me that it's no longer a discretionary decision from year-to-year, it's a mandatory obligation on the part of the Secretary to make the grant, and I think that may be significant in this. Well, I agree, I agree that if, so a state, just to explain where the year-to-year came from, because it used to be a three-year period, a state is eligible for assistance under this, you know, for these grants for a fiscal year if a state submits a plan. So this is, it's not crucial to this case in any way, I'm just making clear that... Well, it might be a little bit, because the tenor of your brief suggests that the sanction was a reduction in the grant, not a determination of eligibility. Correct. But if you consider this all an entitlement, so to speak, at least up to 2011, the amounts were specified, then you have actually made a determination of partial eligibility to what Congress mandated should be given to the state. The condition 18 is an eligibility condition, and you've adjusted that condition in your determination, have you not? No, each year, this is a real thing that happens, the state submitted a plan, and we have the excerpts attached to our brief, and the state received a letter that said, you are eligible. Of course, that was then, but now you're saying they're not eligible because they didn't fulfill condition 18. Failure to fulfill any of the conditions can result in a compliance action. There are all sorts of responses, but a determination of ineligibility means you get no money. You are ineligible, and therefore... Wait, stop. Tell us where you get that definition of eligibility from. And you did take away their money. You get no money. No, no, no money. For the portion of eligibility that you determined, they got no money, $36 million. No, eligible... I mean, this is the way it works under other education programs, too. If you submit a plan, and your plan checks off all the required assurances, you're making promises, and therefore, you get a letter that says you are eligible, and they got such a letter. It just happened that after making those promises, then they did not abide by the condition, which could have been true... You've got a statute, though, that uses the term eligibility, and you may have a form of practice within the Department of Education as how you look at that, but unless you've got a statutory definition of eligibility, or you've got a regulatory definition of eligibility, the fact that you may have decided to treat it in a particular way is not dispositive of what that word means in the statute. But Congress has a lot of different terms in the statute, and it's quite clear these are terms of art. Reduction is one thing. Withholding is one thing. Eligibility is another. We're dealing with an eligibility condition, and it's nowhere else in the statute. The condition of eligibility, number 18, is maintenance of effort. And if they're not eligible, not maintaining effort, with respect to that, you've determined they're not eligible. Now, you're suggesting that the only condition that can result from a lack of eligibility is no funds at all. But the statute doesn't say that. The statute suggests that you're entitled to reduce the grant. Entitled to reduce the grant, which you did do. With regard to just one of the other subparagraphs. So a state, one of the promises, the first promise in its grant application is we will provide a... It's not a promise, it's a condition. Right, but what it has to be, the assurance, an assurance, which is, that's what the state puts into its grant application. Okay, we assure you, Secretary of Education, that we will provide a free, appropriate public education for all... It's an assurance that the state meet. It's not just a promise, but the state meet each of the following conditions. The following conditions are conditions of eligibility. And then you go down to 18, and you get... If I may, if we could look closely at 1412A. I see it. It's not that it meet, it's that the state has in effect policy and procedures to ensure. But even as under any spending program, you can have in effect policy and procedures to assure, but still fail to do what you promised to do. And then the question is compliance. And there are all sorts of compliance actions, and those have never been regarded as a determination of eligibility. It's not a determination. It's an assurance that the state meets each of these conditions. So, you see that last part, the tail? At the point they put the plan down, it can only be a promise. But the fact is, they state, though, that that promise is with respect to a condition, that the state meet this. And if you determine the state doesn't meet one of the conditions, you're stating that it fails in an eligibility condition. It's not a determination that a state is ineligible for funds. Just think about how... There's 36 million, that's what you just did. No, but there are so many levels of potential noncompliance, and so many different enforcement actions. This is noncompliance. We're staying right here in the statute. We're not talking about noncompliance. We're talking about a failure of a condition. No, a failure to do what you said you would do in your plan is noncompliance, and then you could have an enforcement. You see, the last part of the sentence you choose to ignore, which says the state meets each of the following conditions, and the conditions relates back to a state is eligible for assistance. But Congress understood that, notwithstanding these assurances, that, yes, we will meet these following conditions, but states sometimes don't, and that's why there are all these other remedies that are authorized by the statute. But it's pretty clear Congress is saying that a condition of eligibility is MOE. And the condition of eligibility, it's not just a promise. The plan has to meet that eligibility condition to be eligible. And you're saying, well, they did meet it because they got an initial determination of eligibility. But here we come a few years later, and that condition fails. They don't satisfy that condition. And you say, okay, what's the sanction? You now read the statute to say eligibility has to go to all funding. But there's nothing in the statute that suggests that. Let me try to go in another direction. So let's think about the year, the fiscal year 2009, the state fiscal year 2009-2010. They submitted their grant application. It made assurances that they had in effect policies and procedures to ensure that the state meets all of the 25 conditions, including maintenance of effort. They got their full grant for that year. It wasn't until later that the state came to the Department of Education and said we did not, in fact, maintain effort for that year. At that point, the question is what's the consequence? No, no, no. First question is what is the conduct? And the conduct is the failure of a condition. But it did not render them ineligible for funds in the year in which they did not comply. 36 million. No, 36 million, Congress specified, okay, if looking back, it turns out that the state was. Well, that's what your brief says, but my suggestion is the eligibility under this plan goes from year to year. It can't be reduced from year to year. There's a specified dollar amount for each year up to 2011, and you have to. It says the secretary shall pay those sums out. And the only way you can get that amount reduced is by going through some process like this where they fail on a condition. Actually, to be clear, the amount set out are authorizations, and then there are all sorts of sub-provisions. Except it says you're supposed to pay it out. And it says, for example, if appropriations are lower than this, then the state's allotment shall be reduced. This is now just the formula. Well, there's a lot of conditions. There's obviously, I mean, we can have sequesters, we can have changes in the law, we can have everything. But as the statute's written, it provides subject to conditions, you shall pay out those sums that are allocated in this statute. Secretary shall make grants to the state. And then it provides. Indeed, the year in which the state failed to maintain effort, it got its full grant because it made the required assurances. That's all that's required under the idea. You submit the piece of paper, it makes all the assurances, you get your full grant, you have it, they spent it. See, you keep talking about the fact that once the assurance is made, the eligibility determination ends, and that's isolated. Because they got the money. I understand. But the problem is as you go on, there are continuing conditions. They have to meet that condition each year to be eligible for the funds. And with respect to the year 9-10, they were not eligible. They failed on an eligibility condition, condition 18. But honestly, it really makes no sense to say they were not eligible in a year in which they were declared eligible and got their full grant. It was, we're now years later. So just imagine some other type of condition. You know, you have to read the statute, and you're arguing some kind of logic as to the way you function. But Congress basically said meet these conditions, and the question is if you fail to meet these conditions, what are the conditions? The conditions are clearly conditions of eligibility. And so when you take away funds because they didn't meet the condition of eligibility, is that a determination with respect to eligibility? No, and maybe the withholding provisions are helpful in this regard. No, no, they take you off in a different direction. Well, no, but this is, like if I maybe heard on this. Congress, of course, understood that even though a state is found eligible and even though a state promises to do certain things, sometimes a state doesn't. So in the withholding provisions of the IDEA, it said you can withhold money from a state for failing to do what it promised to do. Now, Congress did not say that means it's ineligible for funds. These are different terms. They're different remedies with different procedures attached. And just as a withholding or a cease and desist order or a compliance agreement, these different types of consequences are not the same thing as a finding of ineligibility. A finding of ineligibility means… And this is a little broader. I know you have all the states to work with, and these problems arise probably in connection with all of them. It's probably a difficult program to administer. But what's the problem in not giving them their hearing? You make some good points in the position that you guys took, basically that the reduction in amounts were disproportionate to the overall proportionality. That's your basic thesis. Why not let them make their case? Okay, a multi-part answer. First, just to be clear… This is not really before us. No, no, I understand. But to be clear, first, when they say they had no hearing, they had no ALJ-type hearing. If the court looks at their reconsideration request at page 115 to 126, I mean, they were told you may seek reconsideration. That's in the administrative record at 71 to 73. They did, in fact, seek reconsideration. They briefed it. There were no limits placed on the arguments they could make. There was no restriction on the evidence that they were able to submit to Assistant Secretary Mazzini. Is there a hearing in connection with that? When the court says hearing, this is an informal adjudication. There was not… An ALJ-type hearing is normally used for things like cross-examining witnesses when there are factual disputes. Here, in this type of situation, where it's just a question of whether, as a policy matter, do the facts, the undisputed facts, it's their own data, do those justify a hearing? That's never been the sort of determination that's been the subject of a hearing. I mean, all the education statutes of maintenance of effort requirements, as far as anyone knows, there's never been an ALJ-type hearing on a request to waive a maintenance of effort requirement. The first part is they had every opportunity to submit data and make argument. This was considered by the Deputy Secretary. Well, is what they got, a hearing in conformity with Section 1412? It was not an ALJ-type hearing. I'm using that phrase because… That's what they're asking for. That's what they're asking for. All right, so tell us how the world ends if they get this hearing. Well, you can imagine maybe for this one case. I mean, with your advocacy, you wouldn't have any trouble in a hearing. We're not saying they would prevail in a hearing, of course. But if you think, it's not just that states have the ability to request waivers, so do school districts vis-a-vis their states. And there aren't that many states, so maybe this wouldn't come up, but there are tons of school districts that request waivers of maintenance of effort requirements. And so the idea was that I think that you would then have to have a hearing in connection with all of these. And this is just not the type of… This is not the type of decision. The statute deals in terms of the state, not school districts, in terms of 1412. There may be other statutes… There are other, I'm talking about other provisions. …that are working on 1412 now, but they're limited to states. No, no, but I'm just explaining globally why, in all of history, a request for a waiver of a maintenance of effort requirement under this statute or any other statute, we're not aware of any precedent for an ALJ-style hearing. It doesn't mean that you don't present your evidence, that you don't make argument, so you're heard, but it's not a cross-examination, which is the type of proceeding that's usually used in a factual dispute. So there's never been one, but is there language in the statute that you can point to that says they are not entitled to a hearing before $36 million is taken? What there is is there's language that Congress specified when a hearing is required, and then there is the provision that says the secretary shall reduce the grant by this amount in the next fiscal year if there's a finding of a failure to maintain effort. So it's Congress… And there are other provisions in which Congress says a hearing is required, but not in connection with this reduction. Yeah, they put hearings… They sprinkle them throughout the whole statute. I mean, every time you turn around, they're putting in a hearing somewhere. And here in D… No, it wasn't D. Where's the hearing provision? Yes, D. It is in 1412 D. Yeah, they put one in, and they linked it to eligibility, which is, in the grossest sense, anything under 1412. Actually, in this sense, this court's 1994 Virginia v. Riley decision is relevant because I don't know if the Honor remembers back from the en banc stage, but there it was Virginia's entire IDEA grant was denied because it was determined you are ineligible because your plan doesn't provide for the education of children with disabilities who are expelled for reasons unrelated to their disabilities. And so that was… Let me ask a hypothetical with respect to that. If they did provide it in the initial application and got the grant, and then two years later failed and just changed their plan or did different things or didn't comply with the plan as approved… That's exactly the dichotomy that I'm trying to draw. I know you are. If they don't comply… And you want to go, if the whole plan's at risk, you're considering eligibility to be when the whole plan is at risk, and the state of South Carolina is suggesting that the failure of a condition causing them $36 million is an eligibility reduction or sanction, whatever it is. But the question, I suppose, is where do we get your definition of eligibility from the statute? Well, again, Congress was reacting in rewriting the statute in 1997 to this court's decisions, both the 1994 and the 97 decision. Congress overrode the 97 substantive decision in which this court had said you don't need to provide special education to students who are expelled for reasons unrelated to their disabilities. Congress overrode that. That's in the first paragraph of the eligibility conditions. But then, also, Congress was using the term eligibility the way this court was using it, and the way the department had used it in connection with Virginia. You didn't put it… Your plan was wrong. Your plan didn't make the assurances. Therefore, you cannot get any money. And that is the ordinary understanding. If you are not eligible for a grant under a spending program, it means you don't get any money. There may be a whole host of lesser consequences if you are eligible but don't comply. And that's the universe we're in here. But no one is suggesting that South Carolina was ineligible in the normal sense of the term and in the sense that this court used in 1994 and Congress responded to in 1997. Just… Oh, okay, I wanted to make sure I was clear on… You went to a red light, and he has a question. Yes. If, just assuming for purposes of argument, we agree with the state of South Carolina, they get their hearing. They also say that in that process, we should in effect enjoin the federal government from not spending that $36 million, not taking that $36 million away until the hearing has taken place. What's your position on that part? I'm glad that Your Honor asked that question because it connects to the continuing resolution. This argument only underscores how strange it would be to characterize this type of decision as a fine to give ineligibility. If the department says you're ineligible… You are getting to an answer to my question. Yes. It means you don't get any money, and a court can't say give money. Actually, I think that they're suggesting delay your ultimate decision until you give them a hearing. In other words, you've made a determination that the next year's grant is reduced by $36 million. Well, you've basically… It happened, right. They want to postpone that, I guess. I brought the continuing resolution, but I realize it's hot off the presses, and the court may not want me to hand it up. Congress also specified… Oh, we'd love to have that. Would you like me to hand it up or not? If you've got it, I mean… I'm happy to hand it up. I'm not sure we can read it and understand it. I know, and it's dense. Do you have three? I have six. Okay, good. And the risk of getting into this, Congress did two important things yesterday. The President hasn't signed it yet, but this is the legislation that prevents a government shutdown, so there's every expectation this will be signed very soon. One thing Congress did is very helpful to South Carolina, and it's in reaction to South Carolina. Just tell me what the relevance of this is to the request for the stay. Okay, the thing that's not helpful to South Carolina is Congress said the department shall distribute this money, the funds that were reduced from South Carolina. It's also Kansas. They're not named, but those are the two states that are affected, and redistribute it to other states. And that has to… In here? Yes. That's the shall distribute. So we're in that section. Did they know before we're doing that that we're going to have this hearing? I don't know. Everything was so in flux. I mean, we don't want to get into a battle with Congress. Right. And I'm not saying… This is not imminent. I just want to make the court aware of when the timing would be. As a practical matter, for the department to comply with this, so it's that provided further that the secretary shall distribute to all other states the amount by which a state's allocation was reduced pursuant to this maintenance of effort, failure reduction. As a practical matter, the department would need to know by mid-September in order to make that a reality, to have time to run the formula and distribute the money to other states. I believe South Carolina, for its own state funding purposes, is asking for a decision even sooner than that, and we support that request too. But I just want to… Because this is brand new. Well, it is brand new. And you sort of, as a court, we have to reflect on our proper role in this. Would you two be good enough to supply maybe a little supplemental memo just on the motion to stay and the implication of the continuing resolution? Yes. I'm about to go to Utah for a week tomorrow. Would the court indulge me skiing? May I have till the end of the following week? If you'd given me any other reason, of course not, but that's a good reason. This bill looks so good. Okay, thank you. Now, tell me when you would like to get it in. Two weeks from today. Two weeks? Is that all right with you? And is 10 pages enough? No more than 10 pages? Yes. Okay. Simultaneous filing. Yes, simultaneous filing. Yes. Okay. Well, thank you very much. Thank you. We'll be greeting you, but I think that's a good reason. Thank you. All right, Ms. Kelly. Thank you. To highlight the need for the concurrent resolution, I think Congress realized what had happened here, but the penalty was so great knowing that we never would have any right to actually dispute this in a hearing setting. We'll get your position on that in this memo, and we'll look at that. My question is, and I think I understand the United States' position. The idea is that the plan that is approved in 1412A includes assurances that conditions will be met, and at that state, it can only be promissory in nature. When, and it's approved based on the promise because it meets the 25 conditions. When later, you don't fulfill one of those conditions, their position is that it is a compliance problem and not an eligibility problem, if I understand it correctly. And that may or may not have, I kept pointing to the last phrase in that clause that suggests meet the following conditions, suggests that there are ongoing conditions independent of the promise. To get approval initially, you have to promise it, but it also indicates there are ongoing conditions in order to maintain eligibility. But what's your position with respect to that argument, if I understand it correctly? That's right. And I believe that the eligibility, when an application is submitted, those 25 conditions have to be met and continued. Well, they can only be promised. They can be promised. But it had, the Department of Education, when it submitted its application, knew that it wasn't going to meet. You're talking about South Carolina. I'm sorry, yes. South Carolina Department of Education submitted, but was advised that it could submit a waiver request. So the alternative would have been to submit an incomplete application, which would have been denied in its entirety. So the argument that had the Department, South Carolina Department of Education, just checked. Well, you're not addressing my point. You're sort of going to the procedure that you would follow. And I'm trying to see if there's a distinction between a promise to comply and a failure of compliance on the one hand, or the failure of a condition, which was also a promise, but the condition is independently required to sustain eligibility. And if you don't meet the condition, regardless of whether you promise, how good your promise is, you have to meet the condition. And your argument, I suppose, has to be is that eligibility, ongoing eligibility, depends on compliance with the conditions. It does. And if there's a failure of condition, that's an eligibility problem. That's correct. And at some point in the future, the U.S. Department of Education will put the state on notice that that condition's not met. Well, they did. And they did with us. To the extent of $36 million. Right. That's hypothetical. But with the failure of a condition here, even if you consider it an enforcement action, there's still a right to a hearing. Where do you get that one? That's under 1416. There is, under the withholding section, there is a right to a hearing. Now, the hearing is at the level, it's the same hearing provisions that are in 1412 apply, except that it does not specifically state that the appeal would go on to the Court of Appeals. The Secretary's final decision on withholding is not specifically referenced that that would go on to the Court of Appeals. And I believe the distinction here is... Which section is the hearing? It is section 1416... E? Let me see, I think it's... Sorry. Yes, E4. And the regulations, the set forth that the hearing procedures follow the same hearing procedures that apply to eligibility. And I think that the due process difference, perhaps, is under eligibility, because we're looking at whether the state's eligible for funding, which does impact future funding. In this case, until yesterday, we were talking about the impact of future funding for South Carolina in perpetuity. That under both provisions, though, there was at least the right to administrative hearing. And the administrative hearing was... It's not before a court. But there are procedures that spell out that there's opportunity to present information, evidence. South Carolina submitted a request to reconsider, frankly, because it hadn't received any response at all from the U.S. Department of Education. And it was not notified that that reconsideration was under advisement. The section that outlines the requirements for a hearing, which they're specified in law. You do have a red light. Oh, I do. Sorry. You need to finish? No, sir. All right. We'll come down and greet counsel on that.
judges: Paul V. Niemeyer, G. Steven Agee, Stephanie D. Thacker